IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTA HAYBURN, | : |
| Plaintiff, | : |
| v. | : CIVIL ACTION |
| CITY OF PHILADELPHIA ET AL., | : NO. 11-6673 |
| Defendants. | : |

**MEMORANDUM OPINION**

**Tucker, J.**                                                                                          **August ___, 2012**

Presently before the Court is Defendants the City of Philadelphia ("the City"), Carol Madden ("Madden"), Charles Ramsey ("Ramsey"), Richard Ross ("Ross"), Shawn Trush ("Trush"), Carol O'Neill, ("O'Neill"), Daniel Bartlett ("Bartlett"), and Brad Christy's ("Christy") Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 11). Upon consideration of Defendants' motion with exhibits, this Court will grant Defendants' Motion to Dismiss.

I.   **FACTUAL BACKGROUND**

Plaintiff is a white female police officer for the City of Philadelphia. She was injured on the job on September 12, 2006, which caused her to be removed from duty. (Compl. ¶¶ 17, 28-29, 31.) She then applied for and received, benefits under the Pennsylvania Heart and Lung Act. (Compl. ¶ 30.) 53 Pa. Stat. Ann. § 637 (West).[1]

---

[1] The formal name of the Heart and Lung Act is the Enforcement Officer Disability Benefits Law

1

On February 15, 2008, Plaintiff filed a complaint with the police department's Equal Employment Office for sex discrimination and sexual assault against a male co-employee and supervisor, who allegedly raped Plaintiff. (Compl. ¶ 33.) After Plaintiff filed this internal complaint, the Moving Defendants commenced surveillance of Plaintiff on April 28, 2008. Subsequently, on May 27, 2008, the Moving Defendants filed a petition to terminate Plaintiff's Heart and Lung benefits. (Compl. ¶ 34, 38.) While defending against Defendants' attempts to terminate her benefits, Plaintiff petitioned for penalties for the wrongful denial of benefits, failure to list all injuries, and to amend the official description of injuries resulting from her 2006 injury. (Compl. ¶ 40.)

On July 29, 2008, City Panel Treating Doctors informed Defendants the City, Madden, Ramsey, Compservices Inc., Barbara, and Does that Plaintiff had reached a maximum medical improvement ("MMI") and that her treatments were actually making her worse, not better. (Compl. ¶ 32, 52.) Her injury of September 12, 2006 prevented her from qualifying for use of a firearm, which is required by law to work as a police officer. (Compl. ¶ 54.) In December 2008, the City held a hearing regarding its petition to terminate Plaintiff's benefits. (Compl. ¶ 45.)

The Moving Defendants subsequently stopped Plaintiff's benefits in December 2009, February 2011, and September 2011, which she avers was in violation of her due process rights. (Compl. ¶ 54.) After the interruption of her benefits, Plaintiff was ordered to return to work, and she claims that this was without notice to her. (Compl. ¶ 58.)

Plaintiff was given a hearing regarding her Heart and Lung benefits in November 2010, and again on February 3, 2011. (Compl. ¶ 100.) After Plaintiff's testimony at the November 2010 hearing, Plaintiff claims that Moving Defendants furthered their agreement to pursue an Internal

2

Affairs investigation, which resulted in disciplinary action against Plaintiff. (Compl. ¶¶ 60-64.) Defendants Bartlett, Christy, and Trush explained to Plaintiff that the investigation was due to a household internet retail corporation, which Plaintiff claims is actually run by her husband. (Compl. ¶ 75.) Plaintiff was disciplined by Defendants on August 26, 2011, and as a result, she faces termination or loss of wages and benefits. (Compl. ¶¶ 73-74.) Her benefits were then completely ended on September 1, 2011. (Compl. ¶ 79.)

Plaintiff dual filed a complaint with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC") on or about March 31, 2009, alleging that Defendants actions in petitioning to stop Plaintiff's benefits were in retaliation against Plaintiff for her complaint to the police department's internal Equal Employment Opportunity Unit ("EEO") in February 2008 concerning sexual assault and sex discrimination suffered from male co-worker.[2] (Compl. ¶ 47.) Plaintiff was issued a right-to-sue letter by the PHRC on July 24, 2010, and from the EEOC on October 14, 2011.[3] (Compl. ¶ 81.)

Plaintiff further claims that Defendant Ramsey subjected her and other female employees to discrimination in that three white females were terminated for lying or for not performing their duties, while no such action was taken against male employees who had allegedly committed the same acts. (Compl. ¶¶ 135-37.) Plaintiff further claims that Ramsey himself was accused of lying under oath in a federal action[4] in Washington, D.C., as well as to his employers, yet he has not subjected himself to any discipline. (Compl. ¶ 138.)

---

[2] Defendants do not dispute Plaintiff's exhaustion of her administrative remedies for her sexual assault and discrimination claims. However, as discussed herein, Defendants challenge Plaintiff's exhaustion of administrative remedies concerning her claim of retaliation for testifying at her Heart and Lung hearings.
[3] Plaintiff's Complaint does not state when a right-to-sue letter was issued by the EEOC.
[4] Plaintiff does not provide elaborate on what the federal action entailed or to whom the alleged lie was told.

## II. STANDARD OF REVIEW

On a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the court is required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party. See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 (3d Cir. 1994). A complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim. See In re Warfarin Sodium Antitrust Litig., 214 F.3d 395, 397-98 (3d Cir. 2000). The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Semerenko v. Cendant Corp., 223 F.3d 165, 173 (3d Cir. 2000).

While a court will accept well-pled allegations as true for the purposes of the motion, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). The United States Supreme Court has recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original). In Twombly, the Court made clear that it would not require a "heightened fact pleading of specifics," but only "enough facts to state a claim to relief that is plausible on its face." Id. at 570. A "pleader is required to 'set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.'" Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d

Cir. 1993) (citation omitted).

In 2009, the United States Supreme Court revisited the requirements for surviving a 12(b)(6) motion to dismiss in Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009). In Iqbal, the Court made clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements [will] not suffice" to defeat a Rule 12(b)(6) motion to dismiss. Id. at 1949. "[O]nly a complaint that states a plausible claim for relief [will] survive[] a motion to dismiss." Id. at 1950.

In light of the decision in Iqbal, the Third Circuit set forth a two-part analysis to be applied by district courts when presented with a 12(b)(6) motion. First, the court must separate the legal elements and factual allegations of the claim, with the well-pleaded facts accepted as true but the legal conclusions disregarded. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Second, the court must determine whether the facts alleged in the complaint demonstrate that the plaintiff has a "plausible claim for relief." Id. at 211 (citation omitted). If the court can only infer the mere possibility of misconduct, the complaint must be dismissed because it has alleged, but has failed to show, that the pleader is entitled to relief. Id.

### III. DISCUSSION

Plaintiff asserts claims under 42 U.S.C. §§ 1983, 1985, 1986, Title VII, the Pennsylvania Human Relations Act, the First and Fourteenth Amendments, and United States common law. Defendant responds with a Motion to Dismiss for failure to state a claim upon which relief may be granted.

**A.     Plaintiff Failed to Exhaust Her Administrative Remedies Regarding Her Claim of Retaliation After the Heart and Lung Hearings**

Under Title VII, a plaintiff must exhaust all administrative remedies before bringing a matter into federal court. Anjelino v. New York Times Co., 200 F.3d 73, 87 (3d Cir. 1999). For a discrimination suit, a plaintiff must file a charge with the Equal Employment Opportunity Commission ("EEOC"), and the EEOC must first issue a right-to-sue letter before initiating the suit. 42 U.S.C. § 2000e-5(f)(1); see also Burgh v. Borough Council of Borough of Montose, 251 F.3d 465, 470 (3d. Cir. 2001). The same is true under the Pennsylvania Human Relations Act ("PHRA"). Woodson v. Scott Paper Co., 109 F.3d 913, 925 (3d Cir. 1997).

Furthermore, a plaintiff must exhaust administrative remedies for each discrete act before pursuing a claim in federal court. Miles v. City of Phila., 2012 WL 525737, at *7 (E.D. Pa. Feb. 17, 2012) (quoting Keeley v. Small, 391 F. Supp. 2d 30, 41 (D.D.C. 2005)).

Here, Plaintiff filed a complaint with the EEOC and the PHRC, alleging that Defendants' petition to end Plaintiff's Heart and Lung benefits constituted unlawful retaliation against Plaintiff for her report of sexual assault and sexual discrimination with the police department's EEO.

Plaintiff, however, failed to amend her complaints with the EEOC and PHRC to include her claim that Defendants terminated her benefits in retaliation for her testimony at the Heart and Lung hearings, which is a separate allegation. Since all discrete acts must first be brought before an administrative agency, and the alleged retaliation was a discrete act not brought before the EEOC and PHRC, Plaintiff has failed to exhaust her administrative remedies concerning the discipline she received, allegedly, in retaliation for her protected activity.

**B.     Plaintiff Failed to State a Claim under § 1983**

    **1.     Plaintiff's First Amendment Speech and Petition Clause Claims Fail Under**

**the Public Concern Test**

Plaintiff alleges that Defendants retaliated against her after she engaged in activity that is protected under the First Amendment's Speech and Petition Clauses. However, a government employee's protection under the Petition Clause is limited by the public concern test. Borough of Duryea, Pa. v. Guarnieri, 131 S. Ct. 2488, 2491 (2011). In order to bring a claim under the First Amendment as an employee against a government employer, the Plaintiff must show that he or she spoke as a citizen on a matter of public concern. Id. at 2493. If a public employee speaks on his own behalf and not on matters of public concern, a federal court is not the appropriate forum for redress. Connick v. Myers, 461 U.S. 138, 147-48 (1983). Specifically, this Court has ruled in a non-binding, yet instructive opinion that testifying regarding one's own Heart and Lung benefits is not a matter of public concern. Pettus v. City of Phila., 2011 WL 3452006, at *8 (E.D. Pa. Aug. 5, 2011).

Courts must respect legislative schemes that provide causes of action for workplace grievances, such as employment discrimination complaints, because the Constitution "does not empower [employees] to 'constitutionalize the employee grievance.'" Duryea, 131 S. Ct. at 2490 (quoting Garcetti v. Ceballos, 547 U.S. 410, 419 (2006)).

Here, Plaintiff's retaliation claims are encompassed by Title VII and the PHRA. Thus, Plaintiff cannot circumvent these legislative enactments in order to "constitutionalize" her discrimination claims. Any testimony Plaintiff gave at the Heart and Lung hearing regarding her injury and her benefits is a matter of private concern to her, not the public at large. Therefore, Plaintiff's First Amendment Speech and Petition Clause claims are dismissed with prejudice.

2. **Plaintiff States No Plausible Factual Allegations in Support of Her Due Process Claims**

Plaintiff claims that she was deprived of her property, specifically her Heart and Lung wage and medical benefits, without adequate due process of law. She further alleges that the Moving Defendants initiated the Police Department's internal disciplinary process against her to terminate her benefits. She also claims that the Department's internal discipline system is inequitable and allows for disparate application, because she and her female colleagues have been disciplined for allegedly testifying falsely at Heart and Lung hearings or for failing to perform their duties, while her male colleagues were not.

a. **Plaintiff Fails to State a Procedural Due Process Claim**

Due Process requires that a public employee be "entitled to the notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." McDaniels v. Flick, 59 F.3d 446, 454 (3d Cir. 1995). The deprivation of an interest protected by the Due Process Clause "is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law." Zinermon v. Burch, 494 U.S. 113, 125 (1990). It is only when a plaintiff is afforded an inadequate remedy, or no remedy at all, that she is entitled to pursue a claim premised on the Due Process Clause. Fla. Prepaid Postsecondary Educ. Expense Bd v. Coll. Savings Bank, 527 U.S. 627, 643 (1999). Pre-deprivation processes require that the plaintiff simply be given oral or written notice of the charges, an explanation of the employer's evidence, and an opportunity for her to tell her side of the story. Cleveland v. Loudermill, 470 U.S. 532, 546 (1985).

Here, however, Plaintiff admits that she was given the opportunity to testify at two Heart and Lung hearings. Additionally, the arbitrator of the hearings, not Defendants, ordered her to return to work. Plaintiff has not asserted that she was not provided with a notice of her charges or an explanation of her employer's evidence concerning the charges. Furthermore, she was given an opportunity to tell her side of the story at her Heart and Lung hearings in front of an impartial third party on November 1, 2010 and on February 3, 2011. As such, her pre-deprivation and post-deprivation due process claims are dismissed with prejudice.

### b. Plaintiff Fails to State a Substantive Due Process Claim

In order "[t]o establish a substantive due process claim, a plaintiff must prove the particular interest at issue is protected by the substantive due process clause and the government's deprivation of that protected interest shocks the conscience." Chainey v. Street, 523 F.3d 200, 219 (3d Cir. 2008). Ownership of property is worthy of due process protection. Id. For conduct to meet the "shock the conscience" standard, it must "encompass[] 'only the most egregious official conduct.'" United Artists Theatre Circuit, Inc. v. Twp. of Warrington, Pa., 316 F.3d 392, 400 (3d Cir. 2003) (quoting Cnty. of Sacramento v. Lewis, 523 U.S. 823, 846 (1998)). The purpose of due process is to protect against governmental arbitrariness, "but only the most egregious executive action can be said to be 'arbitrary' in the constitutional sense." Lewis, 523 U.S. at 834.

The definition of what constitutes conscience shocking behavior has an "elusive quality to it." Kaucher v. Cnty. of Bucks, 455 F.3d 418, 426 (3d Cir. 2006). Actions that are "intended to

injure in some way unjustifiable by any government interest" are likely to rise to the conscience shocking level. Lewis, 523 U.S. at 839. This has never been fully defined by the Supreme Court or the Third Circuit, however the "exact degree of wrongfulness necessary to reach the 'conscience-shocking' level depends upon the circumstances of a particular case." Miller v. City of Phila., 174 F.3d 368, 375 (3d Cir.1999). See also Associates In Obstetrics & Gynecology v. Upper Merion Twp., 270 F. Supp. 2d 633, 655 (E.D. Pa. 2003) (purposefully creating a substantial obstacle to abortion and "governmental action intended to create a substantial obstacle to abortion may be one type of arbitrary state action prohibited under the shock the conscience standard"); Schieber v. City of Phila., 320 F.3d 409, 419 (3d Cir. 2003) (negligence is not enough to shock the conscience under any circumstances); Kaucher v. Cnty. of Bucks, 455 F.3d 418, 424 (3d. Cir. 2006) (failure to prevent the spread of MRSA virus to corrections officers in a jail does not rise to a conscience shocking level); Chavez v. Martinez, 538 U.S. 760, 774-75 (2003) (coercive questioning of a suspect hospitalized in the Emergency Room is not egregious or conscience shocking).

In addition to stating a plausible claim that defendants have engaged in conscience-shocking conduct, a plaintiff must allege that they are "member[s] of a protected class, [were] similarly situated to members of an unprotected class, and [were] treated differently from the unprotected class." Wood v. Rendell, 1995 WL 676418, at *4 (E.D. Pa. Nov. 3, 1995). Furthermore, a plaintiff "must show intentional discrimination against him because of his membership in a particular class, not merely that he was treated unfairly as an individual." Poli v. SEPTA, 1998 WL 405052, at *10 (E.D. Pa. July 7, 1998). Furthermore, persons must be alike in "all relevant aspects" to be considered similarly situated. Startzell v. City of Phila., 533 F.3d 183,

203 (3d Cir. 2008). This means that the individuals compared must "have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment for it." Bullock v. Children's Hosp. of Phila., 71 F. Supp. 2d 482, 489 (E.D. Pa 1999). Also, in determining whether two individuals are similarly situated, it is not an act of discrimination to take into account their different positions. Grande v. State Farm Mut. Auto. Ins. Co., 83 F. Supp. 2d 559, 565 (E.D. Pa. 2000).

      Here, Plaintiff's property, her benefits, are protected by the due process clause.  It is unclear, however, in what way she is alleging that the government deprived her of such property in a way that shocks the conscience. Her only averment that may be taken to address the "shocking" conduct requirement is her allegation that Commissioner Ramsey lied under oath in a federal action and to his employees. However, Plaintiff does not claim that Commissioner Ramsey was convicted of perjury or charged with any crime.  Moreover, Plaintiff fails to provide any legal support for such claims.  Notably, Plaintiff does not allege that he lied under oath during her Heart and Lung hearings, thereby depriving her of her protected interest.  An allegation of a lie does not rise to the level of government action intended to interfere with constitutionally protected abortion rights, as in Obstetrics.  Thus, Plaintiff's averment concerning Commissioner Ramsey's untruths submitted under oath do not rise to a level of shocking the conscience under the present circumstances.

      As a female, Plaintiff is a member of a protected class, however, as a female police officer she is not similarly situated to the two male detectives to whom she seeks to compare herself.  The male detectives are higher ranking than Plaintiff, and she has failed to plead that any of their conduct was similar to hers.  Plaintiff also fails to identify any men that were accused of

lying under oath and not disciplined in comparison to the female employees she claims were disciplined for lying or not performing their duties.

As discussed above, because Plaintiff has failed to meet the requirements of a substantive due process claim, her § 1983 claims against Moving Defendants are dismissed with prejudice.

### c. Plaintiff's *Respondeat Superior* Claim Fails Without a Predicate Constitutional Deprivation

Defendants correctly argue that it is well established that a municipality cannot be held liable under a *respondeat superior* theory. In order for Plaintiff to prevail against the City of Philadelphia, she must prove that City officials have violated a constitutionally protected right due to an officially adopted policy, or that the employees were acting pursuant to an officially adopted custom or practice of the municipality. Monell v. Dep't of Soc. Services of City of New York, 436 U.S. 658, 690-91 (1978). The defendant must further make a "deliberate choice to follow a course of action … made from among various alternatives by city policymakers." Simmons v. City of Phila., 947 F.2d 1042, 1060 (3d Cir. 1991). The standard is deliberate indifference. Bd. of Cnty. Commrs. Of Bryan Cnty. v. Brown, 520 U.S. 397, 398 (1997). Thus, before municipal liability will be imposed, the plaintiff must allege that the municipality's alleged unconstitutional practices are "so widespread as to have the force of law." Id. at 404.

Furthermore, for the City to be held liable, the allegedly unconstitutional policies must have been established through the issuance of an official proclamation or policy. Pembaur v. City of Cincinnati, 475 U.S. 469 481 (1986). Policymakers have final, unreviewable discretion to make decisions or take action. City of St. Louis v. Prapotnik, 485 U.S. 112, 142 (1988). Additionally, "when a subordinate's decision is subject to review by the municipality's authorized

policymakers, they have retained the authority to measure the official's conduct for conformance with *their* policies. If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." Id. at 127. (Emphasis in original.)

Here, Plaintiff asserts a list of legal conclusions and naked assertions claiming that the City has policies or customs to treat certain employees differently because of sex or race. The Complaint, however, does not go further than to claim that the different policies exist, and it never points to any actual policy, practice, or custom. Furthermore, Plaintiff makes no factual averments to establish that Defendants ever created a policy or acquiesced to a custom that was deliberately indifferent to Plaintiff's rights. Therefore, the Monell claim against the City is dismissed with prejudice.

**C.    Plaintiff Has Failed to Plausibly Allege Class-Based, Invidious Conspiracy**

To establish a civil conspiracy under § 1985, a plaintiff must show: (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States. United Broth. of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott, 463 U.S. 825, 829 (1983). Further, a § 1985 conspiracy claim requires a "clear showing of invidious, purposeful, and intentional discrimination between classes or individuals." Carter v. Delaware State Univ., 65 F. App'x 397, 400 (3d Cir. 2003) (quoting Robinson v. McCorckle, 462 F.2d 111 (3d Cir. 1972)).

Plaintiff has failed to support a § 1985 class-based conspiracy claim. The Complaint states that she was subjected to adverse treatment because she was subjected to the Heart and Lung hearings and lost of her benefits. She has not, however, pled any facts to support a clear showing of invidious, intentional behavior.

Furthermore, since Plaintiff has failed to state a claim for conspiracy under § 1985, she cannot state a claim for failure to stop a conspiracy under § 1986. Therefore, Plaintiff's §§ 1985 and 1986 claims are dismissed with prejudice.

### IV.   CONCLUSION

Plaintiff has failed to state a claim upon which relief may be granted under 42 U.S.C. §§ 1983, 1985, 1986, the First and Fourteenth Amendments, or United States common law. Additionally, Plaintiff failed to exhaust her administrative remedies for her second retaliation claim under Title VII and the Pennsylvania Human Relations Act, where such claim consists of Plaintiff's allegation of Defendants' retaliation against Plaintiff due to her testimony at her Heart and Lung benefit hearings.  For the foregoing reasons, Moving Defendants' Motion to Dismiss the Complaint will be GRANTED as to these particular claims.

Plaintiff has, however, exhausted her administrative remedies regarding her claim of retaliation after reporting her sexual assault and sex discrimination to the police department EEO. Accordingly, that retaliation claim stands under Title VII and the Pennsylvania Human Relations Act.[5]

An appropriate order follows.

---

[5] Defendants' Motion to Dismiss (Doc. 11) is silent concerning Plaintiff's first retaliation claim, and thus the Court permits such claim to stand.